UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

DANIEL P. WALLACE,

               Plaintiff,

                                       Case Number: 13-13862
v.                                     Honorable Victoria A. Roberts

JP MORGAN CHASE BANK, N.A., *et al.*,

               Defendants.
_____/

## ORDER GRANTING DEFENDANTS' MOTIONS TO DISMISS (DOCS. # 8 and # 11)

## I.    INTRODUCTION

Daniel P. Wallace brought this action against JP Morgan Chase Bank, N.A. ("Chase"), Federal National Mortgage Association ("Fannie Mae"), and Chase's attorneys, Orlans Associates, P.C. ("Orlans") and Marshall R. Isaacs ("Isaacs"; collectively "Defendants").  He seeks damages and to set aside a foreclosure sale of property located at 47565 Vistas Circle South, Canton, Michigan (the "Property"). Wallace says Defendants fraudulently foreclosed on the Property in violation of the Racketeer Influenced and Corrupt Organizations Act ("RICO"), the Fair Debt Collection Practices Act ("FDCPA"), and various state laws.

Two motions to dismiss are before the Court – one filed by Chase and Fannie Mae (Doc. # 8), the other by Orlans and Isaacs (Doc. # 11).  Both motions are fully briefed; the Court waives oral argument under L.R. 7.1(f)(2).

Defendants' Motions to Dismiss are **GRANTED**; the Complaint is **DISMISSED**.

## II.    BACKGROUND

On December 12, 2001, Wallace obtained a $263,750.00 loan (the "Loan") from

First Federal of Michigan to purchase the Property.  To secure the Loan, Wallace granted First Federal a mortgage on the Property (the "Mortgage"); he also executed a promissory note to First Federal promising to repay the Loan (the "Note").

On August 30, 2006, Charter One Bank, N.A., as First Federal's successor-by-merger, assigned its interest in the Property – including the Mortgage and the Note – to Chase.

Beginning in May 2009, Wallace requested multiple loan modifications from Chase.  Chase allegedly refused to accept his applications because the Loan was not in default.  Wallace says Chase told him he would be eligible for a loan modification if he was three months delinquent on the Loan.  Based on Chase's alleged representations, Wallace stopped making Loan payments; however, he never received a modification.

On October 28, 2009, Chase assigned its interest in the Property to Chase Home Finance, LLC ("Chase Home") (the "October 2009 Assignment").  The October 2009 Assignment was executed by Isaacs, as attorney-in-fact for Chase, and notarized by Susan Solwald.  The October 2009 Assignment was recorded with the Wayne County Register of Deeds on November 10, 2009.

Shortly thereafter, Wallace defaulted on the Loan.  Chase Home brought foreclosure-by-advertisement proceedings.  A foreclosure sale was scheduled for December 2, 2009.

On December 1, 2009, Wallace filed an action in state court against Chase Home seeking to enjoin the foreclosure sale based on alleged violations of Michigan's foreclosure-by-advertisement statute (the "State Action").  The foreclosure sale was adjourned pending the outcome of the State Action.  On August 13, 2010, the trial court

2

summarily dismissed Walllace's claims; Wallace appealed to the Michigan Court of Appeals.

On September 29, 2011, the Michigan Court of Appeals affirmed the decision of the trial court, finding that Chase Home complied with the statutory requirements for foreclosure by advertisement.  Specifically, the court found that: (1) the Mortgage contains a power of sale provision; (2) Chase Home provided the required notice for the sale; (3) Chase Home acquired the debt in a timely manner – based on the October 2009 Assignment – and had the authority to foreclose on the Mortgage; and (4) a valid record chain of title existed on the scheduled date of the foreclosure sale.

After the appeal was complete, Orlans – as attorney for Chase, the successor-by-merger to Chase Home – resumed the foreclosure proceedings and scheduled a foreclosure sale for May 17, 2012.  Notice of the sale was published for four consecutive weeks – April 16, April 23, April 30 and May 7, 2012 – in the Detroit Legal News and was posted at the Property on April 17, 2012.  The foreclosure sale was "[a]djourned from May 17, 2012 to February 21, 2013 by posting a notice of adjournment at the place of sale for Wayne County." (*Chase's Mot.*, Doc. 8, Ex. 8, *Sheriff's Deed*).

On February 21, 2013, Chase purchased the Property at foreclosure sale.  Under Mich. Comp. Laws § 600.3240(8), Wallace had six months from the date of the sale to redeem the Property.  On April 23, 2013, Chase quit claimed its interest in the Property to Fannie Mae.  On August 21, 2013, the six-month statutory redemption period expired; Wallace did not redeem the Property by that date.

On September 10, 2013, Wallace filed suit in this Court to set aside the

3

foreclosure sale. Wallace alleges 14 causes of action: (I) Declaratory Relief – Lack of Standing to Foreclose; (II) Violation of Foreclosure of Mortgages by Advertisement Act, Mich. Comp. Laws §§ 600.3201, 600.3220, and 600.3256; (III) Violation of Uses and Trusts Act, Mich. Comp. Laws § 555.5; (IV) Breach of Contract – the Mortgage; (V) Violation of Mich. Comp. Laws § 600.3205a; (VI) Breach of Contract/Promissory Estoppel – Loan Modification; (VII) Violation of Laws/Estoppel; (VIII) Quiet Title; (IX) Slander of Title; (X) Civil Conspiracy; (XI) Concert of Action; (XII) Violation of the FDCPA, 15 U.S.C. § 1692, *et seq.*; (XIII) Violation of Michigan Collection Practices Act, Mich. Comp. Laws § 445.251, *et seq.*; and (XIV) Violation of RICO, 18 U.S.C. § 1961, *et seq.*

Counts I – VII are against Chase; Counts VIII and IX are against Chase and Fannie Mae; and, Counts X – XIV are against all Defendants.

Chase and Fannie Mae moved to dismiss the Complaint. They contend that: (1) the doctrine of res judicata bars all causes of action because the claims were, or could have been, resolved in the State Action; (2) the claims that seek to set aside the foreclosure sale (i.e., Counts I – VIII) must be dismissed, because Wallace lost standing to challenge the sale after the redemption period expired; (3) Wallace's breach of loan modification claim is barred by the statute of frauds; (4) the FDCPA claim fails because they are not "debt collectors" under the FDCPA; and (5) the RICO claim fails because Wallace did not plead fraud with particularity as required by Fed. R. Civ. P. 9(b). Chase and Fannie Mae say that Wallace fails to state a claim under Fed. R. Civ. P. 12(b)(6).

Orlans and Isaacs also filed a motion to dismiss. They say Wallace's claims against them fail under Rule 12(b)(6), because: (1) they are barred by the doctrines of

4

res judicata and collateral estoppel; (2) Wallace lacks standing to challenge the October 2009 Assignment since he was not a party to it; and, (3) the foreclosure sale complied with Michigan law.

Wallace says res judicata does not bar this action because the State Action involved different parties and was based on a different transaction than this action. Moreover, Wallace says the Complaint contains sufficient factual allegations to survive dismissal and supports setting aside the foreclosure sale.

## III.    STANDARD OF REVIEW

A motion to dismiss under Fed. R. Civ. P. 12(b)(6) tests the legal sufficiency of the complaint.  *RMI Titanium Co. v. Westinghouse Elec. Corp.*, 78 F.3d 1125, 1134 (6th Cir. 1996).  "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  A claim is plausible on its face "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Id.* (citing *Twombly*, 550 U.S. at 556).  A complaint "must contain something more ... than ... a statement of facts that merely creates a suspicion [of] a legally cognizable right of action."  *Twombly*, 550 U.S. at 555 (citations omitted).  Indeed, "a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do."  *Id.*; *see also Iqbal*, 556 U.S. at 678 ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice.").  The Court is "not bound to accept as true a

5

legal conclusion couched as a factual allegation." *Iqbal*, 556 U.S. at 678 (citation omitted).

In deciding a motion to dismiss, the Court "may consider the Complaint and any exhibits attached thereto, public records, items appearing in the record of the case and exhibits attached to defendant's motion to dismiss so long as they are referred to in the Complaint and are central to the claims contained therein." *Bassett v. Nat'l Collegiate Athletic Ass'n*, 528 F.3d 426, 430 (6th Cir. 2008) (citation omitted).

## IV.   ANALYSIS

Wallace says Defendants engaged in a scheme to defraud which involved unlawful foreclosure actions, regular and systematic violations of foreclosure laws, and violations of RICO and the FDCPA.  The specific claims of fraud and unlawful conduct Wallace alleges include: (1) Chase did not have standing to foreclose because it did not have a lawful interest in the Note or Mortgage, and no valid chain of title exists; (2) the foreclosure sale was invalid because the Mortgage does not contain a power of sale; (3) Chase breached the Mortgage by failing to provide adequate notice of acceleration of the Loan; (4) Chase breached oral representations regarding a loan modification; and (5) the October 2009 Assignment was invalid because it was forged and fraudulently notarized.  In addition, Wallace says that Chase violated Michigan's foreclosure-by-advertisement statute because it failed to: (1) notify him of the foreclosure in writing; (2) publish or post notice of the February 21, 2013 sale; and (3) publish weekly notices of adjournment of the foreclosure sale.

### A.   Preclusive Effect of the State Action

Under the Full Faith and Credit Act, 28 U.S.C. § 1738, federal courts must "give

6

the same preclusive effect to a state court judgment as that judgment receives in the rendering state." *Buck v. Thomas M. Cooley Law Sch.*, 597 F.3d 812, 816-17 (6th Cir. 2010). Because the State Action was in Michigan, the Court applies Michigan preclusion law. *See Dubuc v. Green Oak Twp.*, 312 F.3d 736, 744 (6th Cir. 2002).

"Michigan law defines *res judicata* broadly to bar litigation in the second action not only of those claims actually litigated in the first action, but also claims arising out of the same transaction that the parties, exercising reasonable diligence, could have litigated but did not." *Peterson Novelties, Inc. v. City of Berkley*, 259 Mich. App. 1, 11 (2003) (citations omitted). A second action is barred by res judicata if: (1) "the first action was decided on the merits"; (2) "both actions involve the same parties or their privies"; and (3) "the matter contested in the second action was or could have been resolved in the first." *Dart v. Dart*, 460 Mich. 573, 586 (1999) (citation omitted).

It is undisputed that the first prong of res judicata is satisfied: the State Action was decided on the merits. *See Roberts v. City of Troy*, 170 Mich. App. 567, 577 (1988) ("[A] summary disposition ruling is the procedural equivalent of a trial on the merits that bars relitigation on the principles of *res judicata*.").

Wallace says Defendants cannot establish the second prong of res judicata; he says they were not part of the State Action and there is no privity between Chase Home, the defendant in the State Action, and them. The Court disagrees.

The Court in *Lintz v. Credit Adjustments, Inc.*, 2008 WL 835824 (E.D. Mich. Mar. 28, 2008), summarizes what constitutes privity for purposes of res judicata:

> In order to establish privity, the parties to the second action only need to be "substantially identical" to the parties in the original action. *Peterson Novelties, Inc. v. City of Berkley*, 259 Mich. App. 1, 12, 672 N.W.2d 351

> (2003). "A privy includes a person so identified in interest with another that he represents the same legal right, such as a principal to an agent, a master to a servant, or an indemnitor to an indemnitee." *Peterson*, 259 Mich. App. at 13, 672 N.W.2d 351. Privity is found when there is a substantial identity of interest, as well as "a working or functional relationship ... in which the interests of the non-party are presented and protected by the party in the litigation." *Phinisee v. Rogers*, 229 Mich. App. 547, 553-554, 582 N.W.2d 852 (1998). Attorneys are considered privies of their clients for the purposes of res judicata. *Plotner v. AT & T Corp.*, 224 F.3d 1161, 1169 (10th Cir. 2000) (for *res judicata* purposes privity extends to parties' attorneys); Henry v. Farmer City State Bank, 808 F.2d 1228, 1235 n. 6 (7th Cir.1986) (attorneys, who represent party in first case, are privies with that party in second case for purposes of *res judicata*.)

*Id.* at *4.

Chase is the successor-by-merger to Chase Home; under federal law, Chase and Chase Home are considered the same entity.  *See Sesi v. Fed. Home Loan Mortg. Corp.*, No. 12–10608, 2012 WL 628858, at *6 (E.D. Mich. Feb. 27, 2012) (observing that when a "mortgage is transferred through merger, there is no need to record the assignment in order for the surviving entity to have authority to foreclose, because the surviving entity has 'stepped into the shoes' of the entity that held the mortgage before the merger").  Thus, privity unquestionably exists between Chase and Chase Home.

The remaining Defendants are in privity with Chase.  Fannie Mae holds an identical interest in the Note, Mortgage and Property as Chase.  Because of the substantial identity of interest between them, privity exists.  *See Evans v. Fed. Nat. Mortg. Ass'n*, 2012 WL 5268849, at *5 (E.D. Mich. Oct. 23, 2012).  And, as Chase's foreclosure counsel and counsel for the October 2009 Assignment, Orlans and Isaacs are in privity with Chase.  *See Bey v. Wells Fargo, N.A.*, 2009 WL 367963, at *3 (E.D. Mich. Feb. 10, 2009) (holding that "a law firm retained to institute foreclosure proceedings is in privity with the mortgagee bank retaining it") (citing *Lintz*, 2008 WL

8

835824, at *4).  The second prong of res judicata is met.

Next, Wallace says res judicata is not appropriate because Defendants fraudulently concealed Fannie Mae's involvement with the Loan and that he could not have reasonably known about its involvement until May 3, 2013.  This is false.  During the State Action, Chase's counsel informed Wallace – in an email dated June 2, 2010 – that "Fannie Mae is the investor for this loan."

Last, Wallace says res judicata does not bar any of its claims because this action is based on a different transaction than the State Action.  Defendants contend that the entire action is barred by res judicata and/or collateral estoppel.

Neither side is correct.  Although many of Wallace's claims of fraud and alleged defects in the foreclosure process were either decided or could have been raised in the State Action, Wallace could not have brought claims in the State Action regarding any alleged deficiency in the February 2013 foreclosure sale because it occurred after the State Action.  Therefore, Wallace's claims survive to the extent they are based on alleged defects occurring after the State Action.

However, res judicata does bar Wallace's claims to the extent they were brought, or could have been brought, in the State Action.  In addition, "[defensive] collateral estoppel precludes relitigation of issues or facts that have already been decided in a prior litigation," where: (1) an issue that is essential to the judgment in the second action was litigated and determined by a final judgment in the first action; and (2) the same or substantially related parties had the full opportunity to litigate the issue.  *See Wilcox v. Sealy*, 132 Mich. App. 38, 46 (1984); *Lund v. Citibank (West) FSB*, 2007 WL 3408468, at *2 (E.D. Mich. Nov. 14, 2007).

9

Both elements of defensive collateral estoppel are met.  The State Action involved the same or substantially related parties; and, Wallace raises many issues that were litigated and determined by a final judgment in the State Action.

The Michigan Court of Appeals found that: (1) the Mortgage contains a power of sale provision; (2) Chase Home provided the required notice for the sale; (3) Chase Home acquired the debt in a timely manner – based on the October 2009 Assignment – and was authorized to foreclose on the Mortgage; and (4) a valid record chain of title existed on the scheduled date of the foreclosure sale.

Despite those findings, Wallace relies on the following allegations to support his claims: (1) Chase did not have standing to foreclose because it did not have a lawful interest in the Note or Mortgage, and no valid chain of title exists; (2) the foreclosure sale was invalid because the Mortgage did not contain a power of sale; (3) Chase breached the Mortgage by failing to provide adequate notice of acceleration of the Loan; (4) Chase breached oral representations regarding a loan modification; and (5) the October 2009 Assignment was invalid because it was forged and fraudulently notarized.

Wallace cannot relitigate these issues or bring claims based on contrary allegations in this action.  *See Lund*, 2007 WL 3408468, at *2.  Because of this, and because he cannot raise claims that he could have raised in the State Action but did not, Plaintiff cannot rely on the five allegations above to support his claims.  *See id.*; *Peterson Novelties*, 259 Mich. App. at 11.  The Court gives the state court judgment preclusive effect.  *See Buck*, 597 F.3d at 816-17.

Moreover, as a non-party, Wallace lacks standing to challenge the October 2009

10

Assignment. *See Cable v MERS, Inc.*, 2012 WL 642129, at *3 (E.D. Mich. Feb. 28, 2012) (holding that "a non-party to an assignment may not challenge the assignment if the assignor and assignee do not contest the document and act in accordance with it").

Wallace's claims survive to the extent they are based on alleged defects in the February 2013 foreclosure sale.

## B. Ability to Set Aside Foreclosure Sale after the Expiration of the Redemption Period

In Counts I-VIII of the Complaint, Wallace seeks to set aside the foreclosure sale. Chase and Fannie Mae say these claims fail because Wallace allowed the redemption period to lapse without redeeming the Property. The Court agrees.

Foreclosures by advertisement are governed by statute in Michigan. *Conlin v. Mortg. Elec. Registration Sys., Inc.*, 714 F.3d 355, 359 (6th Cir. 2013) (citations omitted). After a sheriff's sale, a mortgagor is given a statutory period of time to redeem the property. MCL § 600.3240(1). The statutory redemption period for Wallace to redeem the Property was six months from the date of the foreclosure sale. MCL § 600.3240(8). Once the statutory redemption period expires, "the mortgagor's 'right, title, and interest in and to the property' are extinguished." *Conlin*, 714 F.3d at 359 (citations omitted).

"Michigan courts have held that once the statutory redemption period lapses, they can only entertain the setting aside of a foreclosure sale where the mortgagor has made 'a clear showing of fraud, or irregularity.'" *Conlin*, 714 F.3d at 359 (quoting *Schulthies v. Barron*, 16 Mich. App. 246, 247-48 (1969)); *see also Sweet Air Inv., Inc. v. Kenney*, 275 Mich. App. 492, 497 (2007) ("The Michigan Supreme Court has held that it

11

would require a strong case of fraud or irregularity, or some peculiar exigency, to warrant setting a foreclosure sale aside." (internal quotation marks omitted)).  "Whether the failure to make this showing is best classified as [a] standing issue or as a merits determination, one thing is clear: a plaintiff-mortgagor must meet this 'high standard' in order to have a foreclosure set aside after the lapse of the statutory redemption period." *Conlin*, 714 F.3d at 359-60 (citation and internal footnotes omitted).  "[N]ot just any type of fraud will suffice.  Rather, 'the misconduct must relate to the foreclosure procedure itself."  *Id.* at 360 (citations omitted).

Because Wallace allowed the redemption period to lapse without redeeming the Property, he must present a clear case of fraud or irregularity before the Court will entertain setting aside the foreclosure sale.  *See id.* at 359-60.  "To establish a claim for fraud, Plaintiff must allege: '(1) that a defendant made a material misrepresentation; (2) that it was false; (3) that when the defendant made it, the defendant knew that it was false, or made it recklessly, without any knowledge of its truth as a positive assertion; (4) that the defendant made it with the intention that it should be acted upon by [Plaintiff]; (5) that [Plaintiff] acted in reliance upon it; and (6) that [Plaintiff] thereby suffered injury.'"  *Evans*, 2012 WL 5268849, at *7 (citation omitted).  "It is Plaintiff's burden to establish each of these elements by 'clear, satisfactory, and convincing evidence.'"  *Id.* (citation omitted).

The only claims in the Complaint not precluded by the State Action are based on allegations that Chase violated Michigan's foreclosure-by-advertisement statute because it failed to: (1) notify him of the foreclosure in writing; (2) publish or post notice of the February 21, 2013 sale; and (3) publish weekly notices of adjournment of the

12

foreclosure sale.  However, the Sheriff's Deed indicates that notice of the foreclosure sale was published for four consecutive weeks in the Detroit Legal News, and that the foreclosure sale was "[a]djourned from May 17, 2012 to February 21, 2013 by posting a notice of adjournment at the place of sale for Wayne County."  Alone, these alleged defects do not make "a clear showing of fraud, or irregularity," as required by Michigan law.  *See Conlin*, 714 F.3d at 359; *see also Sweet Air*, 275 Mich. App. at 497.  Wallace cannot identify a material misrepresentation made by a Defendant that he relied on to his detriment.  Because Wallace does not meet his burden to allege a strong case of fraud or irregularity, the Court will not consider setting aside the foreclosure sale.  *See Conlin*, 714 F.3d at 359-60.

In addition, Wallace cannot show he suffered prejudice from any alleged defect in the notice of foreclosure sale or notice of the adjournment.  Under Michigan law, "failure to comply with the conditions set forth in Michigan's foreclosure-by-advertisement statute does not render flawed foreclosures void (i.e., void *ab initio*) but merely voidable."  *Conlin*, 714 F.3d at 361 (citing *Kim v. JPMorgan Chase Bank, N.A.*, 493 Mich. 98, 115 (2012)); *see also Sweet Air*, 275 Mich. App. at 502 (recognizing that "'a defect in notice renders a foreclosure sale voidable,' not void") (citation omitted).  To prove a foreclosure-defect claim – and have the foreclosure set aside – Wallace must show he was "prejudiced" by the defect; this requires a showing that he "would have been in a better position to preserve [his] interest in the property absent [Defendants'] noncompliance with the statute."  *See Kim*, 493 Mich. at 115-16.

Wallace does not allege that he was prejudiced by the alleged defects in the notice of the foreclosure sale and notice of the adjournment of the foreclosure sale; and,

13

he does not argue that he would have been in a better position to preserve his interest in the Property absent the alleged defects.  Moreover, the facts strongly support a finding that Wallace did not suffer prejudice from the alleged defects in the foreclosure process: he did not timely challenge the foreclosure sale; he allowed the redemption period to lapse without attempting to redeem; and, he cannot show that he would have been in a better position to preserve his interest in the Property absent the alleged defects.  Therefore, the Court could not set aside the foreclosure sale even if Defendants failed to provide the required notice under Michigan law.  *See Conlin*, 714 F.3d at 362 (holding that since the "redemption period has lapsed and Plaintiff has suffered no discernible prejudice, the district court was correct to find that Plaintiff's claim [seeking to set aside foreclosure sale] was not actionable"); *see also Worthy v. World Wide Fin. Servs., Inc.*, 347 F. Supp. 2d 502, 511 (E.D. Mich. 2004) (holding that "even if Defendant failed to comply with the foreclosure notice statute, [the Court] would not have sufficient grounds to invalidate the foreclosure sale, because of a lack of prejudice").

Wallace's claims to set aside the foreclosure sale fail.  Counts I-VIII in the Complaint are dismissed.

### C.    Wallace's Remaining Claims (Counts IX – XIV)

Each of Wallace's remaining claims fails as well.

#### 1.  Slander of Title (Count IX)

In Count IX, Wallace says: (1) Chase did not have legal authority to foreclose on the Mortgage; (2) the Sheriff's Deed to Chase and Quit Claim Deed to Fannie Mae are invalid; and (3) despite knowing the Sheriff's Deed and Quit Claim Deed were invalid,

14

Chase and Fannie Mae recorded them with the intent to injure him or with reckless

disregard as to whether injury would occur.

Chase and Fannie Mae say Wallace failed to set forth the elements for slander of

title.  To prove slander of title, a plaintiff "must show falsity, malice, and special

damages, i.e., that the defendant maliciously published false statements that

disparaged a plaintiff's right in property, causing special damages."  *Fed. Nat. Mortg.*

*Ass'n v. Lagoons Forest Condo. Ass'n*, 305 Mich. App. 258, - - - , 2014 WL 1976676, at

*6 (2014) (citation omitted).  Michigan courts find the malice element most important:

> "[T]he crucial element is malice." *Gehrke v. Janowitz*, 55 Mich. App. 643,
> 648, 223 N.W.2d 107 (1974).  A slander-of-title claimant is required to
> show some act of express malice by the defendant, which "implies a
> desire or intention to injure." *Glieberman v. Fine*, 248 Mich. 8, 12, 226
> N.W. 669 (1929). "Malice may not be inferred merely from the filing of an
> invalid lien; the plaintiff must show that the defendant knowingly filed an
> invalid lien with the intent to cause the plaintiff injury." *Stanton v. Dachille*,
> 186 Mich. App. 247, 262, 463 N.W.2d 479 (1990). A plaintiff may not
> prevail on a slander-of-title claim if the defendant's "claim under the
> mortgage [or lien] was asserted in good faith upon probable cause or was
> prompted by a reasonable belief that [the defendant] had rights in the real
> estate in question." *Glieberman*, 248 Mich. at 12, 226 N.W. 669.

*See Lagoons Forest*, 305 Mich. App. 258, - - - , 2014 WL 1976676, at *6.

Wallace's slander of title claim fails to sufficiently plead an act of express malice

that shows a desire or intention to injure.  His supporting allegations amount to mere

"labels and conclusions, and a formulaic recitation of the elements"; this is insufficient to

survive a Rule 12(b)(6) motion to dismiss.  *See Twombly*, 550 U.S. at 555; *see also*

*Iqbal*, 556 U.S. at 678 ("Threadbare recitals of the elements of a cause of action,

supported by mere conclusory statements, do not suffice.").  The Court is "not bound to

accept as true a legal conclusion couched as a factual allegation."  *Iqbal*, 556 U.S. at

15

678 (citation omitted).

Because Wallace does not state a plausible claim for slander of title, Count IX is dismissed.

### 2. Civil Conspiracy (Count X) and Concert of Action (Count XI)

In Count X (Civil Conspiracy), Wallace says Defendants conspired to perform unlawful acts, including: (1) "arranging for and/or causing the unlawful transfer of interests in realty to a passive trust"; (2) "arranging for and/or causing forged assignments with perjured and fraudulent notarizations to be recorded with the Register of Deeds"; (3) "abuse of the foreclosure-by-advertisement process"; and (4) "abuse of process and fraud upon the Court in bringing an eviction action."  Wallace says Defendants committed such acts as part of a larger scheme to unlawfully "steal" the Property from him.

In Count XI (Concert of Action), Wallace says Defendants "maliciously and wrongfully engaged in concerted activities to commit forgery, perjury, fraud, fraud upon the Court and an abuse of process, as part of a larger scheme to unlawfully 'steal' Plaintiff's property."  Wallace's concert of action claim is based on the alleged "unlawful [October 2009] Assignment."

Defendants say Wallace's civil conspiracy and concert of action claims are barred by the doctrines of res judicata and collateral estoppel because they could have been brought in the State Action and/or they are based on issues decided in the State Action.  Orlans and Isaacs say that, since they are the foreclosing party's attorneys, Wallace cannot assert these claims against them.  Chase and Fannie Mae say these claims fail because Wallace does not allege a separate actionable tort, which is required

16

to sustain such claims under Michigan law.  *See Early Detection Ctr., P.C. v. New York Life Ins. Co.*, 157 Mich. App. 618, 632 (1986) ("a claim for civil conspiracy may not exist in the air; rather, it is necessary to prove a separate, actionable, tort"); *Cousineau v. Ford Motor Co.*, 140 Mich. App. 19, 37 (1985) ("Concert of action is itself a claim which, like conspiracy, cannot exist independently of an underlying tortious act.").  The Court agrees with Defendants.

First, these civil conspiracy and concert of action claims are not cognizable against Orlans and Isaacs, since they were Chase's foreclosure counsel and do not owe Plaintiff any duty.  *See Billy v. Orlans Associates, P.C.*, 2012 WL 5301349, at *2 (E.D. Mich. Oct. 25, 2012) (recognizing that "[i]n similar mortgage foreclosure cases ... courts have found that foreclosure counsel is the bank's agent, and that a plaintiff cannot maintain a state-law cause of action against the bank's agent"); *see also Edwards v. Standard. Fed. Bank, N.A.*, 2009 WL 92157, at *3 (E.D. Mich. Jan. 14, 2009) (dismissing similar state law claims against foreclosure counsel after finding they were not liable since they did not owe plaintiff fiduciary obligations).

These claims also fail against Chase and Fannie Mae.

The concert of action claim is based solely on the allegation that the October 2009 Assignment was unlawful.  Thus, Wallace could have pled the concert of action claim in the State Action; this claim is barred by res judicata.  Count XI of the Complaint is dismissed.

Wallace's civil conspiracy claim survives res judicata and collateral estoppel to the extent it concerns alleged abuse of the foreclosure-by-advertisement statute after the State Action ended.  The other factual allegations supporting Wallace's civil

17

conspiracy claim concern issues litigated and decided in the State Action: the October 2009 Assignment was a valid transfer of the debt, and Chase had authority to foreclose on the Mortgage. The final judgment of the state court has preclusive effect on these issues.

Based on the allegations that survive res judicata and collateral estoppel, Wallace fails to allege the separate, actionable tort required to sustain a civil conspiracy claim under Michigan law. *See Early Detection Ctr.*, 157 Mich. App. at 632.

Wallace argues that the Complaint is sufficient based on the allegations that: Defendants committed fraud; abused process by bringing an eviction action; and committed forgery and perjury by recording the alleged fraudulent October 2009 Assignment. However, as explained, Wallace cannot relitigate the validity of the October 2009 Assignment or whether Chase had a legal interest in the Property that authorized it to bring an eviction action/foreclose on the Mortgage. In addition, the Court already found that Wallace failed to plead a plausible claim of fraud. Wallace fails to allege an actionable tort to sustain his civil conspiracy claim. His civil conspiracy claim fails; Count X is dismissed.

### 3.  Violations of the FDCPA (Count XII) and the Michigan Regulation of Collection Practices Act (Count XIII)

In Count XII, Wallace alleges that Defendants violated the FDCPA, 15 U.S.C. §§ 1692e and 1692f. Specifically, Wallace says Chase and Orlans violated the FDCPA because they: (1) "misrepresented the character, amount and/or legal status of the purported debt, and not only threatened to, but did, take action it could not legally take"; and (2) "attempt[ed] to collect amounts that were not permitted by law."

18

In Count XIII, Wallace says Defendants violated the Michigan Regulation of Collection Practices Act (the "MRCPA"), MCL § 445.251, *et seq.*, which prohibits misleading, untrue, or deceptive statements or communication by a "regulated person" in connection with the collection of a debt. *See* MCL § 445.252. Wallace says Defendants violated the MRCPA by misrepresenting the amounts they were legally entitled to collect; specifically, this claim is based on his contention that Chase did not have a lawful interest in the debt to allow it to foreclose on the Mortgage.

Defendants say Wallace's claims under the FDCPA and MRCPA are barred by res judicata and/or collateral estoppel. The Court agrees.

The allegations supporting Wallace's FDCPA and MRCPA claims are that Chase did not have the authority to foreclose on the Mortgage because the October 2009 Assignment was fraudulent and did not transfer legal interest in the debt. Wallace could have brought these claims in the State Action; moreover, these issues were litigated and decided in the State Action. Wallace's FDCPA and MRCPA claims are barred by res judicata and collateral estoppel. Counts XII and XIII are dismissed.

### 4. Violation of RICO (Count XIV)

In Count XIV, Wallace says Defendants violated RICO by "form[ing] an 'association in fact[]' for the purpose of defrauding consumers, to collect unlawful debts, to 'steal' the equity in the consumers' homes, and ultimately to 'steal' the consumers' homes." Wallace says Defendants' unlawful actions consisted of: (1) "fraudulent misrepresentations in documents recorded in public records, and through the mails and electronic transmission"; and (2) "wrongfully foreclosing on real property and/or collecting unlawful debts, pursuant to a well-planned and orchestrated scheme to

19

defraud which was executed on a national scale throughout the United States through the institution of fraudulent foreclosure actions and the regular and systematic violations of foreclosure laws."

The civil remedies section of RICO, 18 U.S.C. § 1964, provides a private cause of action for "[a]ny person injured in his business or property by reason of a violation of [18 U.S.C. § 1962]...." 18 U.S.C. § 1964(c). Wallace brings his RICO claim under § 1962(c), which makes it "unlawful for any person employed by or associated with any enterprise engaged in, or [whose] activities ... affect, interstate or foreign commerce[] to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity...." 18 U.S.C. § 1962(c). To prove a violation of § 1962(c), a plaintiff "must show 1) that there were two or more predicate offenses; 2) that an 'enterprise' existed; 3) that there was a nexus between the pattern of racketeering activity and the enterprise; and 4) that an injury to business or property occurred as a result of the above three factors." *VanDenBroeck v. CommonPoint Mortg. Co.*, 210 F.3d 696, 699 (6th Cir. 2000) (citation omitted), *abrogated on other grounds*, *Bridge v. Phoenix Bond & Indemn. Co.*, 553 U.S. 639 (2008).

Defendants say Wallace's RICO claim is barred under the doctrines of res judicata and collateral estoppel. They also argue that Wallace fails to adequately plead the elements required to show a RICO violation. Specifically, they say Wallace's RICO claim is deficient because: (1) he does not allege a "pattern of racketeering activity"; (2) he fails to allege a predicate act or offense; and (3) his Complaint fails to satisfy pleading requirements, as it "consist[s] of boilerplate legal phrases and conclusory assertions." Wallace says the predicate acts of mail fraud and wire fraud support his

20

RICO claim.

The Court agrees with Defendants; Wallace's RICO claim fails for two reasons. First, even assuming Wallace alleged sufficient facts to support all other elements of his RICO claim, he fails to adequately plead two required predicate acts.  His conclusory allegations of mail and wire fraud are insufficient.

It is well-established that where "the predicate acts are based on fraud, Federal Rule of Civil Procedure 9(b)'s heightened pleading requirement applies."  *Fremont Reorganizing Corp. v. Duke*, 811 F.Supp.2d 1323, 1336 (E.D. Mich. 2011) (citation omitted).  "Under 9(b), '[i]n alleging fraud or mistake a party must state with particularity the circumstances constituting fraud or mistake.'"  *Id.* at 1336-37 (quoting Fed. R. Civ. P. 9(b)).  "The plaintiff must allege the time, place, and content of the alleged misrepresentation on which he or she relied; the fraudulent scheme; the fraudulent intent of [the other party]; and the injury resulting from the fraud."  *Id.* at 1337 (citation and internal quotation marks omitted).

Wallace summarily states that "Defendants did cooperate jointly and severally in the commission of two (2) or more of the predicate acts itemized in 18 USC §§ 1961(1)(A) and (B)."  He refers to mail and wire in a general and conclusory fashion, saying that Defendants' actions "consisted of fraudulent misrepresentations in documents recorded in public records, and through the mails and electronic transmission."  These allegations fail to satisfy even basic pleading requirements under a Rule 12(b)(6) inquiry, let alone the heightened pleading requirements under Rule 9(b). As Defendants contend, Wallace's RICO claim is merely "boilerplate legal phrases and conclusory assertions"; this formulaic recitation of the elements of a RICO claim is

21

insufficient.  *See Iqbal*, 556 U.S. at 678; *Twombly*, 550 U.S. at 555.

Moreover, the RICO claim fails even if the Court construes the mail/wire fraud reference in the Complaint to mean the October 2009 Assignment – which Wallace contends is fraudulent.  With this assumption, Wallace still does not allege *two* predicate offenses with particularity.  In addition, if the October 2009 Assignment is the basis for Wallace's RICO claim, the doctrines of res judicata and collateral estoppel preclude Wallace from prevailing on this claim, because (1) he could have brought a RICO claim based on the October 2009 Assignment in the State Action; and (2) the determination in the State Action that the October 2009 Assignment was a valid transfer of the debt is binding.

Wallace's RICO claim fails; Count XIV of the Complaint is dismissed.

## V.   CONCLUSION

Defendants' Motions to Dismiss (Docs. # 8 and 11) are **GRANTED**.  The Complaint is **DISMISSED**.

**IT IS ORDERED**.

   /s/ Victoria A. Roberts
Victoria A. Roberts
United States District Judge

Dated:  September 24, 2014

The undersigned certifies that a copy of this document was served on the attorneys of record by electronic means or U.S. Mail on September 24, 2014.

s/Linda Vertriest
Deputy Clerk